UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
CHAIM KAPLAN, et al.,                    )
                                          )
     Plaintiffs,                          )
                                          )
v.                                        )     Case No. 09-00646 (RCL)
                                          )
HEZBOLLAH, et al.,                        )
                                          )
     Defendants.                          )
_____)
_____
CHAIM KAPLAN, et al.,                    )
                                          )
     Plaintiffs,                          )
                                          )
v.                                        )     Case No. 10-00483 (RCL)
                                          )
THE CENTRAL BANK OF THE                   )
ISLAMIC REPUBLIC OF IRAN, et al.,         )
                                          )
     Defendants.                          )
_____)

**REPORT OF SPECIAL MASTER
PURSUANT TO ORDER OF REFERENCE
REGARDING THE CLAIM OF MYRA MANDEL**

This action is brought by Myra Mandel under 28 U.S.C. § 1605A. Ms. Mandel is seeking damages for injuries she sustained as a result of a barrage of rockets fired by Hezbollah from Lebanon into northern Israel. Pursuant to the Administrative Plan Governing Special Masters and the provisions of Federal Rule of Civil Procedure 53, the Special Master has received testimony and reviewed documentary evidence to assist in determining any damages to which Myra Mandel may be entitled.

**BACKGROUND**

On July 12, 2006, Hezbollah launched a surprise attack against Israel killing eight Israeli Defense Force soldiers and kidnapping two others at the Israeli/Lebanese border.  Israel responded with airstrikes against Hezbollah-held positions in Southern Lebanon; Hezbollah retaliated with katyusha rockets and mortars fired against Israeli communities located close to the border, including the city of Safed ("Tzfat"). A United Nations-brokered cease-fire took effect on August 14, 2006.  *See* U.S. Congressional Research Services, *Lebanon: The Israel-Hamas-Hezbollah Conflict* (RL3356, updated September 15, 2006) by Jeremy M. Sharp.

### The Islamic Republic of Iran

The statutory scheme underpinning actions against the Islamic Republic of Iran has been exhaustively recounted in *In re: Islamic Republic of Iran Terrorism Litigation*, 659 F.Supp.2d 31 (D.D.C. 2009), obviating the need for recapitulation.  This Court has repeatedly found defendants Islamic Republic of Iran and its Ministry of Information and Security legally responsible for facilitating, financing and providing material financial and logistical support to help carry out attacks on United States citizens.  *See*, *e.g.*, *O'Brien v. Islamic Republic of Iran*, 853 F.Supp.2d 44, 45-46 (D.D.C. 2012); *Valore v. Islamic Republic of Iran*, 478 F.Supp.2d 101, 110 (D.D.C. 2007) ("*Valore I*"); *Estate of Heiser v. Islamic Republic of Iran*, 466 F.Supp. 2d 229, 254 (D.D.C. 2006) (*Heiser I*); *Peterson v. Islamic Republic of Iran*, 264 F.Supp. 2d 46, 61 (D.D.C. 2003) ("*Peterson I*").  This Court found so in this case, as well.  *See* Memorandum Opinion (July 23, 2014), at 2 (Case No. 1:10-cv-00483 (ECF No. 54)) ("July 23 Memorandum").

### The Democratic People's Republic of Korea

In 1988, the State Department designated the Democratic People's Republic of Korea ("North Korea") as a "state sponsor of terrorism." *See Notice, Determination Pursuant to Section 6(j) of the Export Administration Act of 1979; North Korea*, 53 Fed. Reg. 3477 (Feb. 5, 1988). The State Department subsequently rescinded that designation on June 26, 2008. *See Certification of Rescission of North Korea's Designation as a State Sponsor of Terrorism*, 73 Fed. Reg. 37351. Courts have held North Korea responsible for offering direct support to terrorist organizations that have carried out attacks in Israel. S*ee, e.g., Calderon-Cardona v. Dem. People's Republic of Korea*, 723 F. Supp. 2d 441, 452 (D.P.R. 2010); *Massie v. Government of Democratic People's Republic of Korea* 592 F.Supp.2d 57, 73 (D.D.C. 2008). In the July 23 Memorandum, this Court found that North Korea provided "material aid to Hezbollah in three ways: weapons, training, and tunnels to help carry out the attacks." July 23 Memorandum, at 6.

**PROCEDURAL HISTORY**

Based on the events of July and August, 2006, Plaintiffs filed a complaint on April 8, 2009 against Hezbollah under the Antiterrorism Act, 18 U.S.C. § 2333(a), and against North Korea under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A(c) (Case No. 1:09-cv-00646 (ECF No.1)). On March 23, 2010, Plaintiffs filed a second complaint, this time against the Central Bank of the Islamic Republic of Iran; Bank Saderat, Iran; Bank Saderat, PLC and the Islamic Republic of Iran, alleging these entities provided "extensive material support and resources to Hezbollah, that caused, enabled and facilitated" the Hezbollah rocket attacks. Plaintiffs are asking for damages under 28 U.S.C. §§1605A(c) and (d) and 18 U.S.C. § 2333(a) (Case No. 1:10-00483 (ECF No. 3)). This Court subsequently dismissed the statutory claims

against Hezbollah on August 20, 2013, (09-646 (ECF No. 50)), and against Bank Saderat of Iran and Bank Saderat, PLC on November 5, 2010 (10-483 (EFC No. 16)). On August 20, 2015, plaintiffs voluntarily dismissed their common-law claims against Hezbollah (09-646 (ECF No. 63)).

Neither North Korea nor Iran responded to the complaints and plaintiffs subsequently moved for entry of default on May 12, 2014 (09-646 (ECF No. 53) and 10-483 (ECF No. 51)). A hearing was convened on May 27, 2014 to determine defendants' liability during which plaintiffs produced expert witnesses who, in accordance with 28 U.S.C. § 1608(e) (requiring plaintiffs to establish their right to relief by "evidence that is satisfactory to the court"), attested to Iran's and North Korea's complicity in Hezbollah's 2006 attacks against Israel. Based on this testimony, the Court entered judgment by default against the two nations (09-646 (ECF No. 57) and 10-483 (ECF No. 54)).

On October 1, 2014, this Court appointed the undersigned as special master to be governed by the Administrative Plan Governing Special Masters previously adopted in *O'Brien v. Islamic Republic of Iran*, Case No. 1:06-cv-0690 (RCL). *See* 09-646 (ECF No. 58) and 10-483 (EFC No. 55)) ("Order of Reference"). The Court specifically directed the Special Master to issue reports recommending the amount of compensatory damages to which he believed each plaintiff was entitled and to "take and report on evidence of each plaintiff's qualification for relief under § 1605A(c) and the familial relationships between plaintiffs and victims of the rocket attacks in Israel committed between July 12, 2006 and August 14, 2006." *Id*.

Pursuant to these directives, and in keeping with the Federal Rules of Evidence, the Special Master makes these findings and recommendations.

**FINDINGS OF FACT**

1.  Myra Mandel was born in Montreal, Canada on November 22, 1961 and is currently residing in Hemed, Israel.  At all relevant times, Ms. Mandel was a Canadian citizen.

2.  In July 2006, Hezbollah launched a series of rocket attacks against Israel.  One of the cities under siege was Tzfat, where Myra Mandel worked and resided.

**Testimony of Myra Mandel**

By Declaration dated March 29, 2012, Myra Mandel affirms that she was born on November 22, 1961 and is a Canadian citizen.  The gravamen of her testimony is: (1) that she owned an art gallery in Tzfat that was damaged due to a shell that exploded nearby; (2) that the gallery had to be closed during the Hezbollah attack; (3) that she lost income during her normally busy season; (4) that she feels "sadness and anxiety" which, when "coupled with the loss of interest, borne of the feeling of depression and trauma, made running the business impossible"; and (5) that she lost "a sense of security" and "purpose" in her life.

**ANALYSIS**

Before considering whether Myra Mandel has demonstrated a colorable claim to compensatory damages and whether she has met her burden proving the amount of those damages in accordance with the standards enunciated in *Hill v. Republic of Iraq,* 328 F.3d 680, 683-84 (D.C. Cir. 2003), the Special Master must consider, in the first instance, Ms. Mandel's standing as a Canadian citizen to pursue her claims under Section 1605A.  For the reasons stated below, the Special Master finds she lacks the requisite standing and, therefore, recommends that Ms. Mandel's claim be dismissed.

Jurisdiction under the FSIA is statutorily prescribed.  The general grant of immunity afforded sovereign nations is subject only to the exceptions expressly provided in the statute,

which is the "sole basis for obtaining jurisdiction over a foreign state in federal court." *Hwang Geum Joo v. Japan*, 332 F.3d 679, 682 (D.C. Cir. 2003) (citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989)).

28 U.S.C. § 1605A(c) specifies those categories of claimants who may pursue a private action against a designated "state sponsor" of terrorism. These categories include: (i) United States Citizens; (ii) members of the military; (iii) United States employees; and (iv) the legal representatives of a person described in (i), (ii), or (iii). In addition, 28 U.S.C. § 1605A(a)(2)(A)(ii) provides in pertinent part that, "[t]he court shall hear a claim under this section if the *claimant or the victim* was, at the time the act . . . (I) a national of the United States; (II) a member of the armed forces; or (III) otherwise an employee of the Government of the United States." (Emphasis added.) Section 1605A defines "national of the United States" in accordance with section 101(a)(22) of the Immigration and Nationality Act and includes: "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22).

Based both on the legislative history of the FSIA, *see* H.R. Rep. 105-48 at 2 (1997) ("[t]he intent of the drafters was that a family should have the benefit of these provisions if either the victim of the act or the survivor who brings the claim is an American national") as well as Congress' use of the disjunctive phrase "*claimant or the victim*," courts have held that 1605A does not require *both* the claimant and the victim to be U.S. nationals, but extends jurisdiction to either. *See*, *e.g.*, *Leibovitch v. Islamic Republic of Iran*, 697 F.3d 561, 570-72 (7th Cir. 2012) (interpreting section 1605A(a)(2)(A)(ii) as allowing the court to hear intentional infliction of emotional distress claims under the FSIA brought by foreign family members of terrorism victims on the basis of those victims meeting one of section 1605A(a)(2)'s four categories);

*Owens v. Republic of Sudan*, CA Nos. 01-2244; 08-1349; 08-1361; 08-1377; 08-1380; 10-356;12-1224 (JDB), — F.Supp.3d —, 2016 WL 1170919, at *31 (March 23, 2016) (holding that FSIA does not "foreclose[] jurisdiction over family members' claims"); *Thuneibat v. Syrian Arab Republic*, CA No. 12-cv-00020 (BAH), — F.Supp.3d —, 2016 WL 829870, at *6 (D.D.C. March 1, 2016) (holding that foreign nationals may assert their claims for emotional anguish resulting from the extrajudicial killing of a U.S. national at the time of the attacks); *Worley v. Islamic Republic of Iran*, 75 F.Supp.3d 311, 327 (D.D.C. 2014) (holding that claims of foreign plaintiffs can be heard when based on "injuries suffered by victims who meet the statute's requirements") (citing *Leibovitch*, 697 F.3d at 572 ); *Owens v. Republic of Sudan*, 826 F.Supp.2d 128, 149 (D.D.C. 2011) (holding that plaintiffs whose cause of action arose from the claims of U.S. nationals at the time of the attacks satisfied section 1605A(a)(2)(A)(ii)); *Estate of Doe v. Islamic Republic of Iran*, 808 F.Supp.2d 1, 11 (D.D.C. 2011) (holding non-U.S. national plaintiffs entitled to compensation § 1605A).

Section 1605A's inclusion of non-U.S. nationals does nothing to further Myra Mandel's claim for compensatory damages. While the aforementioned cases acknowledge the rights of foreign nationals to press an action under the FSIA, those rights do not include claims unrelated to, and independent of, injuries sustained by a U.S. national. *See, e.g., Owens* 826 F.Supp.2 at 149 (plaintiffs who provided evidence that "their claims are *derived* from claims where the victims were either U.S. nationals or U.S. Government employees at the time of the attacks" satisfied section 1605A(a)(2)(A)(ii) )(emphasis added); *Worley*, 75 F.Supp.3d at 326 (foreign nationals "*must [] base their claims* on injuries suffered by victims who meet the statute's requirements") (emphasis added) (citing *Leibovitch*, 697 F.3d at 572)).

Neither the statute nor its legislative history lends credence to the position implicit in Ms. Mandel's complaint, namely, that a foreign national whose claim is not derivative of, or inextricably tied to, injuries suffered by a U.S. national, may petition a United States court for damages incurred due to terrorist activity abroad. This concept turns *Leibovitch* and its progeny on its head and expands the contours of this Court's jurisdiction beyond permissible boundaries. The Seventh Circuit in *Leibovitch* took great pains to demonstrate, through a careful parsing of the FSIA's language and an exhaustive review of its legislative history, that foreign nationals may, in select circumstances, pursue a private right of action under section 1605A. Those circumstances, by definition, are limited to claims brought by close family members seeking redress for loss of solatium due to injuries sustained by a U.S. national injured or killed as a result of an extrajudicial terrorist act. Myra Mandel meets none these narrowly circumscribed conditions.

**CONCLUSION**

To allow Ms. Mandel to pursue her claim is to grant every resident of northern Israel who was injured in the 2006 Hezbollah attacks the right to petition this Court for relief under a statute established "principally for American claimants while waiving sovereign immunity in a broader set of cases also involving American victims." *Leibovitch*, 697 F.3d at 531. Ms. Mandel is neither an "American claimant" nor is she seeking compensation for injuries sustained by "American victims." The Special Master is constrained, therefore, to recommend that her claim be dismissed.

Dated:  April 12, 2016                                    Respectfully submitted,

By:*/s/ Alan L. Balaran*
Alan L. Balaran, Esq.
Special Master