## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHAIM KAPLAN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 09-00646 (RCL) |
| | ) |
| HEZBOLLAH, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| CHAIM KAPLAN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 10-00483 (RCL) |
| | ) |
| THE CENTRAL BANK OF THE | ) |
| ISLAMIC REPUBLIC OF IRAN, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MOTION TO SPECIAL MASTER TO RECONSIDER/MODIFY HIS RECOMMENDATIONS WITH REGARD TO THE KAPLAN PLAINTIFFS

On October 1, 2014 the court appointed Attorney Alan Balaran as special master to hear the damages claims brought in the instant action and to file a report and recommendation regarding the measure of individual damages for which defendants Iran and North Korea are liable. (DE 58). Accordingly, on April 2, 2016, Special Master Balaran filed his report regarding the claims of Rabbi Chaim Kaplan, (DE 71), and awarded Chaim Kaplan $2,000,000 (Two Million Dollars) as compensatory damages for pain and suffering, plus $1,000,000 (One Million Dollars) for loss of solatium. Special Master Balaran did not award Chaim Kaplan any economic damages, nor did he make an award to the Kaplan children. Pursuant to Federal Rule of Civil Procedure 53(f)(2),

Chaim Kaplan hereby asks Special Master Balaran to reconsider his recommendation and (1) modify the pain and suffering award to Chaim Kaplan to a higher amount, (2) award Chaim Kaplan economic damages, and (3) award Mushka, Reuven and Menachem Kaplan compensatory damages for their pain and suffering.

(1)    <u>Chaim Kaplan's Compensatory Damages for Pain and Suffering</u>

As is set forth in the Special Master's report, Chaim Kaplan suffered severe physical injury and psychological trauma as a result of rocket attacks in July, 2006 in the city of Tzfat. On the morning of July 13, 2006, Chaim was running a children's sleepaway camp located in the outskirts of Tzfat when he suddenly heard explosions nearby. (DE 47, Exhibit B, ¶7). While scrambling to protect the children under his care, he received a hysterical call from his wife in which she explained a rocket had fallen right next to their home causing the windows to explode. Chaim could hear his children screaming and crying in the background. Chaim rushed home, tried to calm his family and then drove into town to speak to the insurance assessors. During this drive a missile hit right next to the driver's side of Chaim's vehicle. It took two hours for the doctors to meticulously pick out glass and metal fragments from Chaim's eye and to bandage and stitch cuts and abrasions to his face and hands. (DE 47, Exhibit A, ¶10-13). Chaim also suffered serious injury to his ear. Chaim and his family were so traumatized they fled Tzfat for six weeks. (DE 47, Exhibit B, ¶16).

Plaintiff Chaim Kaplan, his wife and his children suffered terrible ongoing trauma and emotional distress for years. Chaim Kaplan has a permanent partial hearing loss of 50% in his left ear. He is also plagued by an intense and constant itching in this ear, which neither medication nor therapy has been able to alleviate. He constantly hears

echoes out of his left ear - background noises are amplified and reverberate, and interfere with his ability to clearly hear people speaking and with other important sounds. He also cannot enjoy moments of tranquility and quiet, as even "white" noise causes annoying reverberations in his ear. (DE 47, Exhibit B, ¶18).

As evidence of his physical injuries, Chaim Kaplan provided his own testimony by Declaration dated March 2012, as well as an expert Declaration dated April 2012 from Dr. Alan Friedman. On September 20, 2015, Chaim Kaplan produced a supplemental Declaration from Dr. Friedman and a memorandum from treating physician, Dr. Ronald Korman. Both physicians confirmed a permanent, partial hearing loss and tinnitus.

In arriving at his award, Special Master Balaran noted that he had not been provided with Chaim Kaplan's medical records. This was inadvertent. Plaintiff's counsel believed that the records had been produced and apologize for the oversight. The records are attached along with a true and accurate English translation. (Exhibits A-D). These records reflect the seriousness of Chaim Kaplan's injuries. He suffered, "Hydrosclersis of the eardrums… [his] cut was sutured with nylon 5/0+ 60 60…. [he had] left eye-subconjunctival hematomas + foreign objects in the eyelids, conjunctive had a number of foreign objects, cornea, a number of small foreign objects." (Exhibit D). He continues to be diagnosed with otosclerosis, hearing loss and tinnitus, (Exhibit B), which is reflected in his hearing tests, (Exhibits A&C). Chaim Kaplan hopes that Special Master Balaran will increase the $2,000,000 (Two million dollars) pain and suffering award upon reviewing the records, which demonstrate the severe and ongoing nature of his injuries.

Additionally, in considering this request to modify, plaintiff asks that Special Master Balaran consider case law on injuries of this nature.

Assessing appropriate damages for physical injury or mental disability can depend upon a myriad of factors, such as "the severity of the pain immediately following the injury, the length of hospitalization, **and the extent of the impairment that will remain with the victim for the rest of his or her life**." *Peterson II,* 515 F.Supp.2d at 25 n.26 (citing *Blais v. Islamic Republic of Iran,* 459 F.Supp.2d 40, 59 (D.D.C.2006)). In *Peterson II,* this Court adopted a general procedure for the calculation of damages that **begins with the baseline assumption that persons suffering substantial injuries in terrorist attacks are entitled to $5 million in compensatory damages**. *Id.* at 54. In applying this general approach, this Court has explained that it will "depart upward from this baseline to $7–$12 million in more severe instances of physical and psychological pain, such as where victims suffered relatively more numerous and severe injuries, were rendered quadriplegic, **partially lost vision and hearing**, or were mistaken for dead," *Valore,* 700 F.Supp.2d at 84, and will "depart downward to $2–$3 million where victims suffered only minor shrapnel injuries or minor injury from small-arms fire," *id.* (Emphasis added).

*Wultz v. Islamin Republic of Iran*, 864 F. Supp 2d 24, 37-38 (D.C. Cir., 2012)

In *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258, 266-68 (D.D.C. 2003), plaintiff Stuart Hersh spent one day in the hospital for treatment of multiple shrapnel-caused wounds and burns. Mr. Hersh's permanent injuries included 60 percent hearing loss, tinnitus, back pain, chronic ear infections, scars, and difficulty walking. Mr. Hersh also had chronic PTSD and suffered severe psychological injuries, which led to a suicide attempt. In the same case, Abraham Mendelson suffered from multiple shrapnel-caused entry wounds in his legs, burns that included a burned cornea, and a partially-severed ear.  He spent four days in the hospital. Mr. Mendelson's permanent injuries included a perforated right eardrum, a partially-severed ear, partial hearing loss, tinnitus, large scars, chronic headaches and symptoms of PTSD. Both plaintiffs were awarded $12,000,000 (Twelve million dollars) for pain and suffering.

Chaim's injuries are not as severe as those of Stuart Hersh and Abraham Mendelson, but he has similar types of injuries, and he certainly did not suffer "only minor shrapnel injuries." Plaintiff's counsel suggest that the seriousness of Chaim Kaplan's injuries, as documented in the attached medical records, justify the $5,000,000 award prescribed by *Peterson II*.

(2) Chaim Kaplan's Economic Damages

Chaim Kaplan was seriously injured, physically and emotionally, as a result of the rocket attacks in 2006. Those injuries are detailed in Chaim's declarations dated March, 2012 and September 2015, as well as in Dr. Friedman's expert report. For more than three months prior to the attacks, Chaim was earning 8500 NIS per month. He has not been able to work since and has to rely on the help and financial support of his family abroad. Chaim produced his economic damages to Special Master Balaran in the form of the few documents he was able to locate regarding his income, as well as his own declaration. He had hoped this would be sufficient. Not everyone has to file a return with the tax authority in Israel, and Chaim falls into a category of people who would not need to file. Therefore, Chaim does not have a tax authority file and he thought that he would not be able to obtain an expert report without one. After the Special Master ruled that the documents and declaration he provided were not sufficient, Chaim consulted with an economic expert and found that an expert report could be drafted based upon the documents he was able to locate and his own declaration.

Attached is the report of Dov Weinstein. (Exhibit F). Dov Weinstein is an Israeli certified public accountant and has extensive experience in accounting, auditing, providing economic actuarial evaluations, as well as local and international tax

consulting. Mr. Weinstein has given expert opinions in a number of court cases. Just last year he was qualified as an expert and provided live testimony in the *Sokolow v. PA* trial in the Southern District of New York. Mr. Weinstein's C.V. is attached to his report.

Mr. Weinstein confirms that Rabbi Kaplan would not have been in the category of people required to file tax returns and therefore there is no tax file to review. He also confirms that additional records could not be obtained from the non-profit for which Rabbi Kaplan worked before he was injured. However, Mr. Weinstein maintains that he is able to arrive at expert opinions based upon the documents Rabbi Kaplan was able to locate (Exhibits to his supplemental declaration dated September, 2015), as well as Rabbi Kaplan's declarations and representations. (See Exhibit F, p. 3). After a thorough review of the financial evidence, Mr. Weinstein opines that the present value of Rabbi Kaplan's total economic loss is $1,912,367.

Rabbi Kaplan apologizes for the delay in his bringing this report and pleads for the Special Master's patience, especially in light of how serious his damages are and the fact that Defendants in this case have defaulted. Mr. Kaplan asks that the Special Master please consider Mr. Weinstein's report and reconsider/modify his decision regarding Rabbi Kaplan's economic damages.

(3) Compensatory Damages for Mushka, Reuven and Menachem Kaplan

Mushka, Reuven and Menachem Kaplan were 7, 5 and 3 years old respectively when their city was bombed by Hezballah. They suffered serious emotional trauma. Some of that trauma was set forth in the declaration produced by their parents in May, 2012. At the time, their parents did not want to talk to them about what they remembered or have them speak to a psychiatrist out of fear that they would cause damage. And, even

a year ago when they were asked again about documenting their children's injuries, they were again ambivalent to raise the issue with them as they were still quite young. It had been their hope that their own reports about their children's trauma would be sufficient. However, in hindsight they realize that Special Master Balaran is correct in that they did not sufficiently detail those injuries and they should consult an expert.

After receiving Special Master Balaran's report, Rabbi and Mrs. Kaplan understood they needed to provide the Special Master with more detail, but continued to be reluctant to discuss it with their still young and immature children. The children suffered significant trauma in the weeks, months and years after the rocket attacks, but in recent years they have improved drastically. Rabbi and Mrs. Kaplan were fearful they could set the children back if they talked to them. They decided, therefore, to discuss their children with Professor Rael Strous in order to get his thoughts. Professor Strous agreed that discussing the attacks with the children "may potentially cause some harm" and concluded that he is able to provide opinions within a reasonable degree of medical certainly based upon his interview with Rabbi Kaplan and both parents' affidavits. The report of Professor Strous is attached as Exhibit E.

Professor Strous sets forth in great detail the information he gleaned from his interview with Rabbi Kaplan and his review of the declarations in this case. Mushka Kaplan became very fearful of missiles, crying almost every day. She had night terrors and there was a marked change in her behavior. She continues to be anxious, quiet and withdrawn, though she has improved lately. Reuven Kaplan suffered from anxiety, nightmares and hypersensitivity to stress. He also became very withdrawn, was particularly attached to his mother and was preoccupied with safety. He continues to call

home twice a day to be sure everyone is okay. Menachem was particularly affected when Rabbi Kaplan returned from the hospital wounded. He developed secondary bedwetting during the rocket attacks, which continued for years and suffered from tremendous anxiety.

Professor Strous opines that all three Kaplan children exhibit some form of unspecified anxiety disorder and PTSD. He concludes that "with the trauma coming as it did so early in their development and with the effects already noted as per Mr. Kaplan's report, despite the caveat of no formal psychiatric evaluation, it is expected that many aspects of the trauma and its repercussions will continue to affect these children for a significant period of time."

"It is firmly established that a plaintiff may recover damages for mental suffering unaccompanied by physical injury where the plaintiff sues for an intentional tort." *Nnadili v. Chevron U.S.A., Inc.,* 435 F. Supp. 2d 93, 99 (D.D.C. 2006) (citing *Adams v. George W. Cochran & Co., Inc*., 597 A.2d 28, 31 (D.C.1991)). Additionally, it is acceptable for an expert to testify about that mental suffering in place of the victim when seeking testimony from the victim could be harmful. "Mr. Rozenman was unable to appear at the trial. His psychiatrist, Dr. Rael Strous explained that his "mental status remains very 'fragile' " and that "it would be clinically inadvisable" for Noam to testify. Both Dr. Strous and Mr. Rozenman's mother indicated that testifying could cause him to suffer a psychological relapse." *Campuzano v. Islamic Republic of Iran,* 281 F. Supp. 2d 258, 267 (D.D.C. 2003) (citations omitted).

Mushka, Reuven and Menachem Kaplan ask Special Master Balaran to take into consideration that Chaim and Rivka Kaplan only had their children's best interests at

heart. They now understand both that more evidence was required by Special Master Balaran, and that their children had suffered greatly and this needed to be presented to the Court via Professor Strous.

Wherefore, Rivka and Chaim Kaplan, on behalf of their children Mushka and Reuven, ask the Special Master to reconsider and modify his decision, and to award them compensatory pain and suffering damages.

Wherefore, Chaim Kaplan, asks Special Master Balaran to reconsider and modify his pain and suffering award to $5,000,000.00, to award him economic damages in the amount of $1,912,367, and to make a compensatory damages award to Mushka and Reuven and Menachem Kaplan for their pain and suffering.

Dated:  April 18, 2016

Respectfully submitted,

THE BERKMAN LAW OFFICE, LLC

/s/ Robert J. Tolchin
Robert J. Tolchin
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627
Fax: (718) 504-4943
RTolchin@berkmanlaw.com